GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA, Plaintiff,

v.

OLD REPUBLIC INTERNATIONAL CORPORATION, Founders Title Group, Founders Title Company and Founders Title Company, Inc., Defendants.

No. 85 C 9516.

United States District Court, N.D. Illinois, E.D.

Sept. 23, 1986.

Richard Phelan, Robert J. Bates, Jr., Phelan, Pope and John, Chicago, Ill., for plaintiff.

John W. Morrison, Steven H. Mora, Nancy E. Albert-Goldberg, Karon, Morrison & Savikas, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION
## AND ORDER

ASPEN, District Judge:

General Accident Insurance Company of America ("General") brought this action for a declaratory judgment clarifying its alleged obligations under an insurance policy issued to defendants Old Republic International Corporation ("ORIC"), Founders Title Group, Inc. ("FTG") and Founders Title Company ("FTC"). FTG and FTC now move to dismiss the complaint for lack of personal jurisdiction pursuant to Fed.R. Civ.P. 12(b)(2). Based on the presumption of success on that motion, FTG and ORIC also move under Fed.R.Civ.P. 12(b)(7) that the complaint should be dismissed because of General's failure and inability to join an indispensable party, FTC. In addition, FTG and ORIC move to dismiss the case for failure to state a claim under Fed.R. Civ.P. 12(b)(6). For the following reasons, the motion to dismiss of FTG and FTC for lack of personal jurisdiction is granted. Accordingly, ORIC's motion to dismiss under 12(b)(7) is granted as well.

## JURISDICTIONAL FACTS

General is an insurance company incorporated in Pennsylvania with its principal place of business in Philadelphia, Pennsylvania. It is licensed to do business in Illinois and actively transacts business in Illinois. FTG and FTC are both incorporated in California and have their principal places of business there as well. ORIC is a Delaware corporation with its principal place of business in Chicago, Illinois.

The three defendant corporations are affiliated. FTC is a title insurance company which is a wholly-owned subsidiary of FTG, a holding company, which itself is a wholly-owned subsidiary of Old Republic Title Insurance Group, Inc. ("ORTIG"). One-hundred percent of the voting shares of OR-TIG are owned by ORIC and several of its wholly-owned subsidiaries. *See* FTG and ORIC's Motion to Dismiss, Exh. C.

In 1982, ORIC obtained the insurance policy at issue in this case from General. The policy provided comprehensive coverage for ORIC and all of its subsidiaries.

According to General's complaint, a number of lawsuits have been filed against FTC in various jurisdictions, none of them Illinois, for misrepresentations made by an FTC employee relating to the sufficiency of "Time Drafts" which FTC held in escrow in connection with various real estate transactions. FTC apparently intends to make claims under the insurance policy for any liability it might incur from these suits. General fired a preemptive strike, filing this suit with the hopes of obtaining a legal declaration that it is not liable under the terms of the policy.

The facts relating to the negotiation and execution of the insurance contract are relevant to the jurisdictional determination. In 1981, officials at ORIC were considering the centralization of insurance coverage for ORIC and all of its subsidiary companies, and early in 1982, ORIC's chief executive officer advised the ORIC companies that ORIC had indeed decided to centralize coverage. *See* Thomas Gilson Deposition at 8–10. In connection with this undertaking, ORIC requested that all of its various entities complete insurance questionnaires and return them to ORIC in Chicago. Robert Soper Deposition ("Soper Dep."), Exh. 8. However, the questionnaires were internal documents of ORIC and were not submitted to General. On April 27, 1982, FTG completed and returned its questionnaire to ORIC in Chicago. Soper Dep., Exh. 10.[1] On July 23, 1982, ORIC submitted an insurance application to an underwriting manager for General located in Illinois after which General issued the insurance policy in question in this case. Language in the policy suggests that with respect to the policy, ORIC acts on behalf of the insureds, including FTG and FTC. *See* Complaint,

---

1. Apparently, FTG responded on behalf of FTC and FTG's other subsidiaries. No FTC question- naire is included in the record.

Exh. A. Furthermore, FTG and FTC sent their portion of the insurance premiums to ORIC in Chicago, after which ORIC paid the premium to General or its agent. Soper Dep. at 43–44. Finally, in connection with a decision by ORIC to apply for a reduced deductible amount under the policy for certain ORIC companies, including FTG and FTC, Aldo Zucaro, ORIC's president, wrote a letter to General's underwriting manager in which he represented that no entity seeking a decreased deductible was cognizant of any act, error or omission which might result in a claim under the insurance policy.

Throughout this entire process, neither FTG nor FTC had control over the procurement of insurance coverage. Neither FTG nor FTC had any role in negotiating the insurance policy, FTG and ORIC's Motion to Dismiss, Exh. A, B, and it is clear from the record that in performing the activities mentioned above, these two companies responded to directions from officials at their parent corporation, ORIC, which unilaterally decided to obtain the comprehensive insurance coverage. Neither FTG nor FTC requested ORIC to obtain the insurance on their behalf. FTG and ORIC's Motion to Dismiss, Exh. C.

Moreover, both FTG and FTC are incorporated in California, which is also their principal place of business.[2] Neither is licensed to do business or transacts any business in Illinois.[3] These two companies do not have any office, street address or telephone in Illinois, nor do they own real estate or other tangible property here. They do not advertise or solicit business in Illinois, and neither has financial records or bank accounts here. Furthermore, the FTC employee who allegedly made the misrepresentations underlying the lawsuits for which FTC is seeking insurance coverage is a California resident and employee. More-

over, none of those suits was brought in Illinois.

## PERSONAL JURISDICTION

A federal court has jurisdiction over a person in a diversity case only if a court of the forum state could assert jurisdiction if the suit had been filed in state court. *Lakeside Bridge & Steel Co. v. Mountain State Construction Co., Inc.*, 597 F.2d 596, 598 (7th Cir.1979), *cert. denied*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980). Illinois state courts can assert personal jurisdiction over a nonresident defendant who is "doing business" in Illinois or who has performed one of the acts listed in the Illinois long-arm statute. *Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill.2d 190, 199, 57 Ill.Dec. 730, 734, 429 N.E.2d 847, 851 (1981). The Illinois long-arm statute provides in pertinent part that:

(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person ... to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this State;

(2) The commission of a tortious act within this State;

Ill.Rev.Stat. ch. 110, ¶ 2–209 (1985). Furthermore, the party seeking to impose jurisdiction over a non-resident defendant bears the burden of proving a valid basis for such jurisdiction. *R.W. Sawant & Co. v. Allied Programs Corp.*, 111 Ill.2d 304, 310, 95 Ill.Dec. 496, 499, 489 N.E.2d 1360, 1363 (1986).

### A. Transaction of Business

We first turn to the question of whether FTC or FTG was transacting any

---

**2.** The following facts are drawn from the affidavits of FTG and FTC company officials submitted with the motion to dismiss.

**3.** Officials from the two companies come to Chicago to report to their superiors at ORIC, but

those visits are not in connection with business transacted in Illinois. Furthermore, under the Illinois long-arm statute, the cause of action must arise from the jurisdictional acts asserted. Ill.Rev.Stat. ch. 110, ¶ 2–209(c) (1985).

business in Illinois within the meaning of ¶ 2-209(a)(1). As the factual discussion above clearly indicates, neither of these companies directly conducted business in Illinois with regard to the cause of action asserted in this complaint. All contacts that FTG and FTC had with Illinois were in response to requests by their parent ORIC. Although FTG and FTC sent their premium payments to ORIC in Illinois, the mere act of sending payments to Illinois is insufficient to confer personal jurisdiction over non-resident corporations. *Ingersoll Milling Machine Co. v. J.E. Bernard & Co.,* 508 F.Supp. 907, 912 (N.D.Ill.1981). Neither FTG nor FTC had any direct contact with General or its agent in Illinois and any activities conducted in Illinois with regard to obtaining insurance coverage were done by ORIC, acting as the parent corporation of FTG and FTC. Thus, the only way that these two defendants could have transacted business in Illinois within the meaning of the long-arm statute is through the activities of ORIC as an "agent." However, in determining the existence of an agency relationship, the most important element a court must consider is the extent to which the principal can control the actions of the agent with respect to the matters entrusted to him. Restatement (Second) of Agency § 14 (1958); *Ingersoll,* 508 F.Supp. at 912. FTG and FTC, as subsidiaries of ORIC, had no right to "control" ORIC's activities in any way regarding the negotiation for and procurement of the insurance policy. ORIC's decision to obtain comprehensive coverage was imposed unilaterally without consulting its subsidiary companies, who in any event would have no right to object to a decision by their owner. Accordingly, we cannot construe ORIC to have been an agent of FTG and FTC for the purposes of submitting those subsidiary corporate entities to the jurisdiction of this Court.

**B. Tortious Acts In Illinois**

■ General asserts that even if FTG and FTC did not transact business in Illinois within the meaning of ¶ 2-209(a)(1), they committed tortious acts within Illinois under ¶ 2-209(a)(2). In conjunction with this contention, General points to Counts 4 and 9 of its complaint which allege that in submitting information to General for insurance coverage, FTC, through ORIC, failed to disclose its knowledge of possible or existing lawsuits regarding the Time Draft escrows from which insurance claims might arise. Although the word "misrepresentation" appears in Count 9, a close reading of Counts 4 and 9 reveals that they allege nothing more than supplemental contract claims regarding exclusions for coverage on claims for which liability was purportedly anticipated by the insured, but not disclosed. These allegations do not read as tort claims, and they do not even approach the specificity level required in pleading such fraudulent behavior. *See* Fed.R. Civ.P. 9(b). Thus, no tortious acts were alleged to have occurred in Illinois. *See, e.g., Zeunert v. Quail Ridge Partnership,* 102 Ill.App.3d 603, 58 Ill.Dec. 242, 430 N.E.2d 184 (1st Dist.1981).[4]

**C. Doing Business**

■ Finally, the Court will briefly address the question of whether FTG and FTC were "doing business" in Illinois for the purposes of establishing personal jurisdiction. The "doing business" doctrine, as opposed to the "transaction of business" element of the long-arm statute, provides that Illinois state courts have personal jurisdiction over non-resident corporations which are "doing business" in Illinois (a form of constructive consent). *Cook Associates, Inc. v. Lexington United Corp.,* 87 Ill.2d 190, 199, 57 Ill.Dec. 730, 734, 429 N.E.2d 847, 851 (1981). However, contemplated as part of this test is some regularity of business activities within the forum

---

4. Even if General had made sufficient tort allegations in its complaint, it would appear that the tortious injury would be deemed to have occurred in Pennsylvania, the place of General's residence. *Club Assistance Program v. Zuker-*

*man,* 594 F.Supp. 341, 346 (N.D.Ill.1984). Thus, no tortious act would have occurred within Illinois for the purposes of determining personal jurisdiction.

state. *Id.* at 202–03, 57 Ill.Dec. at 735–36, 429 N.E.2d at 852–53. The facts of the present case indicate that FTG and FTC do not do regular business in Illinois. In fact, their only connection with Illinois appears to be through their parent corporation, ORIC, which resides here and which obtained the insurance policy from General here. This Court cannot, however, infer from these minimal activities that FTG and FTC are "doing business" in Illinois.

Because we have determined that there is no basis for jurisdiction under Illinois law, we need not initiate the constitutional inquiry of whether personal jurisdiction over FTG and FTC would be consistent with due process.[5] Accordingly, because General has not met its burden of establishing a valid basis for this Court's personal jurisdiction over FTG or FTC, the motion to dismiss under Fed.R.Civ.P. 12(b)(2) is allowed.

### INDISPENSABLE PARTY

ORIC has filed a motion to dismiss this case under Fed.R.Civ.P. 12(b)(7) because if the Court does not have personal jurisdiction over FTC, General is unable to join an indispensable party. *See* Fed.R.Civ.P. 19; 7 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1610 (1986). General does not quarrel with this proposition, and because we have already determined that this Court does not have jurisdiction over FTC, ORIC's motion to dismiss will be allowed.

### CONCLUSION

Because this Court has determined that it has no personal jurisdiction over FTC or FTG and that this lack of jurisdiction prevents General from maintaining this action with an indispensable party, the motions of FTC, FTG and ORIC to dismiss this case pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(7) are granted. It is so ordered.

---

**5.** It is well settled that in Illinois, the question of personal jurisdiction under the long-arm statute is not coextensive with the due process inquiry.

*See Cook Associates, Inc. v. Lexington United Corp.,* 87 Ill.2d 190, 197, 57 Ill.Dec. 730, 733, 429 N.E.2d 847, 850 (1981).