**AMERICAN STAIR CORPORATION, INC., a Delaware corporation, Plaintiff,**

v.

**RENATA CONSTRUCTION COMPANY, INC., a New York corporation, Defendant.**

**No. 85 C 4835.**

United States District Court, N.D. Illinois, E.D.

Oct. 8, 1985.

Barry D. Weiss, Lurie, Sklar & Simon, Ltd., Chicago, Ill., for plaintiff.

Michael D. Sher, Mark T. Carberry, Friedman & Koven, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

This cause is before the court on defendant's motion to dismiss for lack of personal jurisdiction. Defendant argues that the exercise of jurisdiction over it in this case would violate the Illinois long-arm statute, Ill.Rev.Stat. ch. 110, § 2–209(1) (1983) and the due process clause of the fourteenth amendment. For the following reasons, defendant's motion is granted.

### Background

This case is a breach of contract action instituted by American Stair ("American Stair"), a Delaware corporation with its principal place of business in Willow Springs, Illinois, against Renata Construc-

tion Company ("Renata"), a New York corporation with its principal place of business in New York City. The suit is for a quantum meruit recovery for preparation of some preliminary shop drawings for the construction and installation of stairs and railings in a construction project before American Stair's participation was terminated. Renata is not licensed to do business in Illinois, nor does it keep an office, agents or representatives in Illinois. It has no customers, property, bank accounts or telephone listings in Illinois. Because of the jurisdictional nature of this inquiry, a review of the facts surrounding the alleged transaction is necessary. The following facts are alleged in the plaintiff's complaint and the affidavits filed by the parties.[1]

American Stair first learned of the building project, entitled "Newport Gardens," through the Dodge Construction Reporter, an industry publication with nationwide circulation of information pertaining to the construction industry (Plaintiff's Memorandum Exhibit "C"). The notice was placed in the Reporter by the owner of the project, Newport Associates. Linda Stear, the sales representative for American Stair, contacted David J. Paul, the listed owner and architect for the project. Paul referred her to Renata, the general contractor for the project.

American Stair submitted a proposal to furnish and deliver the stair and railing system for Newport Gardens (Complaint ¶ 5, Exhibit "A") on September 13, 1984. On November 13, 1984, Ms. Stear called John Hammond, a representative of Renata, to quote him American Stair's bid price, which Hammond verbally accepted. American Stair then sent Hammond a mailgram confirmation of the agreement dated November 14, 1984, and a letter dated November 16, 1984 (Complaint, Exhibits "B" and "C"). American Stair immediately commenced preparation of shop drawings in accordance with its agreement with Renata.

On November 21, 1984, John Hammond called American Stair to notify it that the Newport Gardens project was temporarily on hold, and American Stair should not proceed further with its shop drawings until notified to do so (Complaint ¶ 8). That same day, Gordon Fitzsimmons of American Stair called Hammond to inform him that American Stair had already completed 75% of the drawings for the project (Stern Affidavit ¶ 4).

On February 20, 1985, Renata notified American Stair and instructed it to resume work on the shop drawings. American Stair agreed to recommence production and promised to submit its completed drawings to Renata by February 25, 1985. American Stair sent a mailgram confirming these dates on February 20, 1985 (Complaint Exhibit "D"). American Stair subsequently completed the drawings and submitted copies to Renata on February 27, 1985 (Complaint Exhibit "E"). On March 25, 1985, Hammond called American Stair at its Willow Springs office to notify it that Renata was cancelling its agreement to purchase the stairs and railings from American Stair.

Based on the foregoing facts, American Stair filed this suit in the Northern District of Illinois alleging breach of contract and willful and wanton misconduct.

### Motion to Dismiss for Lack of Personal Jurisdiction

■ A federal court has personal jurisdiction in a diversity case only if the forum state would have jurisdiction. *Jacobs/Kahan & Co. v. Marsh*, 740 F.2d 587, 589 (7th Cir.1984); Fed.R.Civ.P. 4(e). The plaintiff bears the burden of proving sufficient evidence to support jurisdiction. *United States Railway Co. v. Port Huron & Detroit Railroad Co.*, 495 F.2d 1127, 1128 (7th Cir.1974). Plaintiff's burden is twofold: it must establish the existence of jurisdiction under the Illinois long-arm statute, and it must show that exercise of jurisdiction over the defendant will not of-

---

1. The court may rely on affidavits when determining the propriety of a dismissal for lack of

jurisdiction. *O'Hare International Bank v. Hampton*, 437 F.2d 1173, 1176 (7th Cir.1971).

fend the due process clause of the fourteenth amendment.

The Illinois long-arm statute, Ill.Rev. Stat. ch. 110, § 2–209 (1983), dictates the circumstances in which a non-resident defendant may be sued in Illinois. Specifically, § 2–209(1) enables a court to exercise personal jurisdiction over a non-resident defendant for causes of action arising out of the defendant's "transaction of business" in Illinois. At issue is whether the contacts between Renata and American Stair were sufficient to meet the existing criteria for "transaction of business" under the statute.

In *Cook Associates v. Lexington United Corp.*, 87 Ill.2d 190, 197, 57 Ill.Dec. 730, 429 N.E.2d 847 (1981), the Illinois Supreme Court noted:

> It is important to recognize that [the] due process standard represents only the outer limits beyond which a state may not go to acquire jurisdiction. A state is free to set its own limits in acquiring this jurisdiction within the parameters allowed by the due process clause.... [T]he boundaries or limits under our statute are not to be equated with the 'minimum contacts' test of the due process clause.

In analyzing the Illinois cases under the long-arm statute, several fact patterns emerge which illustrate the factors a court should stress when determining the existence of personal jurisdiction. In *Artoe v. Mann*, 36 Ill.App.3d 204, 343 N.E.2d 647 (1st Dist.1976), the plaintiff visited the defendant's California office, offering to sell motion picture equipment to defendant. The parties engaged in further negotiations by phone after plaintiff returned to Illinois, and later reached an agreement during plaintiff's subsequent visit to California. The defendant then mailed a purchase order confirming the agreement to the plaintiff in Illinois.. The plaintiff sued for unpaid freight charges, and the court dismissed for lack of personal jurisdiction. The court relied on the following facts: the transaction had been initiated by the plaintiff in California, California was the place

of performance, and the defendant's only contact with Illinois was the mailing of a formal order to the plaintiff within the state. *Artoe*, 36 Ill.App.3d at 206, 343 N.E.2d 647.

In the present case, Renata's contacts with Illinois are as attenuated as those which led the court to dismiss in *Artoe*. Renata never mailed anything to American Stair or solicited its business in any manner. The architect's mailing of a Dodge Construction Report detailing the specifics of a construction project was not sufficient to confer jurisdiction on Renata, the general contractor, who was not even identified in the Dodge Report. Aside from the Dodge Report, plaintiff has alleged only three long distance telephone calls initiated by Renata from New York City. All other communications were at the behest of American Stair. This exchange of phone calls and correspondence is insufficient to support jurisdiction in this case. *See Woodfield Ford, Inc. v. Adkins Ford Corp.*, 77 Ill.App.3d 343, 349, 32 Ill. Dec. 750, 395 N.E.2d 1131 (1st Dist.1979). *Wessel Co., Inc. v. Surfer Publications*, No. 83 C 1253 (N.D.Ill. July 28, 1983).

American Stair's reliance on the fact that preparation would occur in Illinois is misplaced. Although this is a consideration in the issue of personal jurisdiction over defendants in a contract action, it is not necessarily dispositive, especially where defendant's completion of performance is outside Illinois and its only contacts with Illinois were by interstate telephone and mail. *Wessel Inc. v. Surfer Publications*, No. 83 C 1253 (N.D.Ill. July 28, 1983); *Wessel Co., Inc. v. Yoffee & Beitman Management Corp.*, 457 F.Supp. 939 (N.D.Ill.1978). *See Geneva Industries, Inc. v. Copeland Construction Corp.*, 312 F.Supp. 186, 188 (N.D.Ill.1970) (the court dismissed suit where the plaintiff solicited a purchase order from a Pennsylvania defendant for cabinets to be manufactured in Illinois). Defendant's limited conduct and lack of connection with Illinois are such that it would not reasonably anticipate being haled into court in Illinois.

American Stair solicited Renata's business in New York. Although it sent no agents to New York, it initiated the contact between the parties that led to the making of the alleged contract. The fact that the plaintiff initiated the contractual arrangement has led several Illinois courts to decline jurisdiction under similar circumstances. *See, e.g., Artoe v. Mann, supra; Chicago Film Enterprises v. Jablanow*, 55 Ill.App.3d 739, 743, 13 Ill.Dec. 466, 371 N.E.2d 161 (1st Dist.1977) ("plaintiff cannot lure the nonresident defendant into the jurisdiction") *Central Clearing, Inc. v. Omega Industries, Inc.*, 42 Ill.App.3d 1025, 1028, 1 Ill.Dec. 570, 356 N.E.2d 852 (1st Dist.1976).

Furthermore, the alleged contract in this lawsuit was entered in New York, not Illinois. This contract could not be formed until Renata accepted American Stair's proposal. *See Empress International, Ltd. v. Riverside Seafoods, Inc.*, 112 Ill.App.3d 149, 67 Ill.Dec. 891, 894, 445 N.E.2d 371, 374 (1st Dist.1983). According to the complaint, this acceptance occurred in New York (Complaint ¶ 6), and Renata's duty to perform (i.e., payment for the delivery and furnishing of the stairwell) would arise in New York. In light of these facts, combined with the fact that American Stair initiated the contractual relationship at issue and most of the communications thereafter, this court holds that American Stair has not satisfied its burden of establishing jurisdiction under the Illinois long-arm statute. Therefore, Count I of the Complaint is dismissed for lack of personal jurisdiction.

 American Stair also argues that, even if this court has no jurisdiction under its contract claim, there is jurisdiction to hear the second count of the complaint, which alleges the tort of willful and wanton misconduct. Although allegations of willful and wanton misconduct may sometimes be separated from a contract claim, where, as here, the allegations merely reiterate the contract claim and add a request for punitive damages, Count II cannot be separated from the contract claim, and so recognition of jurisdiction would be improper. "When a defendant challenges jurisdiction, a court will make a preliminary inquiry as to whether the complaint states a legitimate cause of action to 'insure that acts or omissions which form the basis of a cause of action that is patently without merit will not serve to confer jurisdiction.'" *Zeunert v. Quail Ridge Partnership*, 102 Ill.App.3d 603, 608, 58 Ill.Dec. 242, 430 N.E.2d 184 (1st Dist.1981). *See also Central Clearing, Inc. v. Omega Industries, Inc.*, 42 Ill.App.3d 1025, 1 Ill.Dec. 570, 356 N.E.2d 852 (1st Dist.1976). The gist of the American Stair's claim is a breach of contract; the additional allegation of willful and wanton misconduct is insufficient to create personal jurisdiction over Renata.[2]

 The court's conclusion regarding personal jurisdiction in this case is mandated by the Constitution as well as the Illinois long-arm statute. The Due Process Clause protects an individual's liberty interest in not being subjected to the binding judgment of a forum with which he has established no meaningful "contacts, ties or relations." *Burger King Corp. v. Rudzewicz*, —— U.S. ——, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). In *Rudzewicz*, the

---

**2.** The cases cited by plaintiff in support of this argument are inapposite. Two of the cases involve negligence actions in which the court allowed a separate count for willful and wanton misconduct. *Lynch v. Board of Education*, 82 Ill.2d 415, 45 Ill.Dec. 96, 412 N.E.2d 447 (1980); *O'Brien v. Township High School District 214*, 83 Ill.2d 462, 47 Ill.Dec. 702, 415 N.E.2d 1015 (1980). The third case, *Morrow v. Goldschmidt Associates*, 126 Ill.App.3d 1089, 82 Ill.Dec. 152, 468 N.E.2d 414 (1st Dist.1984), allowed a claim for willful and wanton misconduct in a breach of warranty suit arising out of the purchase of a house where the complaint alleged that the builder's conscious failure to cure defects constituted a conscious disregard for human safety. American Stair does not allege anything akin to "reckless disregard for human safety." Its damages are purely economic, which are not recoverable under this tort theory. *See Album Graphics, Inc. v. Beatrice Foods, Inc.*, 87 Ill. App.3d 338, 349, 42 Ill.Dec. 332, 408 N.E.2d 1041 (1980).

court explained the focus of a due process inquiry:

> [T]he Constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state.... Although it has been argued that foreseeability of causing *injury* in another state should be sufficient to establish such contacts there when policy considerations so require, the Court has consistently held that this kind of foreseeability is not a 'sufficient benchmark' for exercising personal jurisdiction.... '[T]he foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.'

*Rudzewicz*, 105 S.Ct. at 2183 (citations omitted). The *Rudzewicz* court reiterated the principle articulated by the Supreme Court in *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958):

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.... [I]t is essential in each case that there be some act by which the defendant purposefuly avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.

*See Rudzewicz*, 105 S.Ct. at 2183. American Stair's claim is based on a contract it initiated with Renata. Nearly all of the remaining discussions were initiated by American Stair; at most, Renata placed three phone calls to Illinois from New York. The mere existence of a contract with an out-of-state resident is not sufficient to satisfy the "minimum contacts" test of personal jurisdiction, especially where the plaintiff initiated the contact with the non-resident defendant. *Burger King v. Rudzewicz*, 105 S.Ct. at 2185. *See also Lakeside Steel & Bridge Co. v. Mountain State Construction Co.*, 597 F.2d 596 (7th Cir.1979); *cert. denied*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980);

*Hall's Specialties, Inc. v. Schupbach*, No. 84–1303 (7th Cir. Mar. 29, 1985); *Wessel v. Surfer*, No. 83 C 1253 (N.D.Ill. July 28, 1983).

In *Madison Consulting Group v. State of South Carolina*, 752 F.2d 1193 (7th Cir. 1985), the Seventh Circuit recently emphasized the importance of determining which party initiated the contractual relationship at issue. The court reasoned that, if the defendant initiated contract discussions with a nonresident plaintiff, then this contact could be sufficient to confer personal jurisdiction, even if the defendant's remaining contacts with the forum were minimal. *Id.* at 1195–97. In a subsequent case, *Hall's Specialties, Inc. v. Schupbach*, 758 F.2d 214 (7th Cir.1985), the court underscored the importance of this consideration. In *Hall's*, the defendant placed an advertisement for a truck in the Illinois Prairie Farmer. The advertisement subsequently found its way into the Indiana Prairie Farmer, and attracted the interest of Hall's, an Indiana resident. The Seventh Circuit held that, although the defendant had initiated the contacts by placing the ad, there was no personal jurisdiction because the defendant did not " 'knowingly' cause the ad to appear in the Indiana publication." At 216.

The alleged contract in the present case was initiated solely by plaintiff, who contacted the defendant with a bid proposal and was responsible for nearly all the subsequent contacts between the parties. Defendant's only contacts with Illinois involved three phone calls, which are insufficient under the facts of this case to support a finding of personal jurisdiction. Therefore, defendant's motion to dismiss is granted for want of personal jurisdiction over defendant.